

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/19/2019

ROBERT E. ABREU, ESQ.*

*MEMBER: THE FLORIDA BAR,
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN, MIDDLE AND
NORTHERN DISTRICTS OF FLORIDA
AND THE EASTERN DISTRICT OF TEXAS

EST.   2004



FLORIDA OFFICE
201 ALHAMBRA CIRCLE
SUITE 504
CORAL GABLES, FLORIDA 33134
TELEPHONE: (786) 558-9646
INTERNET: WWW.ABREULAW.COM

BOGOTA OFFICE
LAWYERS INTERNATIONAL
CARRERA 13, NO. 54-55, OFC. 402
BOGOTA, COLOMBIA
TELEPHONE: 011-57-311-485-8157
INTERNET: WWW.LAWYERSINTERNATIONAL.CO

November 19, 2019

**BY ECF**

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:   United States of America v. Jose Restrepo a/k/a/ "Pino" "Leonel Alexander Rodriguez"
      a/k/a/ "Jose Alfred Jimes"
      Case No.: 17-cr-029(VEC)
      Motion to Amend Judgment to Reflect Defendant's Arrest Date on the U.S. Extradition Warrant

Dear Judge Caprioni:

      Your Honor sentenced the above defendant on January 24, 2019 to a term of imprisonment of 57 months (D.E. 26). At the sentencing hearing, the Court ordered the PSI amended to reflect the correct date the defendant was arrested on the United States Extradition Warrant ("Extradition Warrant)" in Colombia *i.e.*, October 20, 2017.[1] The Judgment and Sentence reflects the Court's finding that the defendant should receive credit for the time he was incarcerated in Colombia on the Extradition Warrant.[2]

      The defendant has notified undersigned counsel that the Bureau of Prisons (BOP) will not credit him the time spent in Colombian custody under the Extradition Warrant unless the date is reflected in the judgment. In an effort to have the BOP correct the arrest date, undersigned counsel provided the defendant with copies of all pertinent documents (Judgment in a Criminal Case, Criminal Docket, Redacted DEA-6 Report that reflects the arrest date in Colombia, Government's Sentencing Submission which reflects the correct arrest date and Sentencing Transcript), but to no avail. To date, the BOP has not credited the defendant for the time spent in custody in Colombia on the Extradition Warrant.

      Pursuant to 18 U.S.C. §3585(b), "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences – (1) as a result of the offense for which the sentence was imposed."

---

[1] *See*, Exhibit "1" - Transcript of Sentencing Hearing, at page 3, lines 4-17.
[2] *See*, Exhibit "2" - Judgment in a Criminal Case, at p. 2.

Undersigned counsel has contacted Sidhardha Kamaraju the Assistant United States Attorney assigned to this case and he has advised that the Government does not oppose the relief sough herein.

The defendant, by and through undersigned counsel, would respectfully request the Court order the Judgment in a Criminal Case amended to reflect the date the defendant was taken into custody in Colombia on the Extradition Warrant, *to wit*: October 20, 2017.

Respectfully submitted,
**ABREU LAW** **PLLC**

Robert E. Abreu, Esq.

REA/bmf

Application GRANTED.  An amended Judgment will be entered to reflect the date the defendant was taken into custody in Colombia.

SO ORDERED.

11/19/2019

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE

J2M9RESS

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4          v.                          17 CR 29 (VEC)

5  JOSE RESTREPO,

6              Defendant.

7  ------------------------------x

8                                      New York, N.Y.
                                       February 22, 2019
9                                      2:00 p.m.

10

11 Before:

12             HON. VALERIE E. CAPRONI.

                                       District Judge
13

14                   APPEARANCES

15 GEOFFREY S. BERMAN
        United States Attorney for the
16      Southern District of New York
   SIDHARDHA KAMARAJU
17      Assistant United States Attorney

18 ROBERT E. ABREU
        Attorney for Defendant
19

20 ALSO PRESENT:  PAULA GOLD, Spanish Interpreter

21

22

23

24

25

J2M9RESS

1          (Case called)

2          MR. KAMARAJU:  Good afternoon, your Honor.  Sid

3     Kamaraju on behalf of the government.

4          THE COURT:  Good afternoon.

5          MR. ABREU:  Good afternoon, your Honor.  Robert Abreu

6     on behalf of the defendant.  He is present to my right.

7          THE COURT:  Good afternoon, Mr. Abreu.  Good afternoon

8     Mr. Rodriguez.  Your last name is Rodriguez, correct?

9          THE DEFENDANT:  Rodriguez.

10          THE COURT:  Please be seated.

11          THE DEFENDANT:  Thank you.

12          THE COURT:  OK.  Mr. Abreu have you and your client

13     read the presentence report that was dated January 8, 2019

14     which was reissued with a very minor correction on February 20?

15          MR. ABREU:  Yes, your Honor.

16          THE COURT:  Just let me note for the record that the

17     correction date says it's February 20, 2018.  That should

18     actually be 2019.

19          Have you discussed it with your client?

20          MR. ABREU:  Yes, I have.

21          THE COURT:  Mr. Rodriguez, did somebody read you the

22     presentence report?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Did you discuss it with your attorney?

25          THE DEFENDANT:  Yes, ma'am.

1           THE COURT:  Mr. Abreu, do you have any objections to

2      the report?

3           MR. ABREU:  No, your Honor.  We filed no objections.

4           THE COURT:  I would just note I noted a couple of

5      corrections.  On the face page the date of his arrest is not

6      correct.  On paragraph 30 that mistake is repeated.

7           The date of arrest in Colombia should be October 20,

8      2017.  Is that correct?

9           MR. ABREU:  I was going to bring that up later but,

10     yes, that's correct.

11          MR. KAMARAJU:  Yes, your Honor.

12          THE COURT:  I'll have that correction made to the

13     report.

14          The presentence report will be made part of the record

15     in this matter and placed under seal.  If an appeal is taken,

16     counsel on appeal may have access to the sealed report without

17     further application to this Court.

18          So I received a sentencing submission from the defense

19     that was dated February 11, 2019 that included some e-mail from

20     various family members of Mr. Rodriguez.  And I received a

21     letter from the government dated February 11, 2019.

22          So the defendant pled guilty to one count of

23     conspiracy to import cocaine into the United States.  The

24     presentence report reflects a guideline level of 25, criminal

25     history category I, which yields a guideline range of 57 to 71

J2M9RESS

1    months.

2              I find the correct guidelines calculation is as

3    follows.

4              I start with drug guidelines.  Based on the stipulated

5    amount of five to fifteen kilograms of cocaine, 2D1.1(a)(5) and

6    (c)(5) set the base offense level of 30.  The defendant

7    provided a safety valve proffer so that's minus two.  The

8    defendant pled guilty and accepted responsibility early on.

9    That's minus three, leading to an adjusted offense level of 5.

10             The defendant has one prior conviction for illegally

11   entering the country.  That's one criminal history point.  One

12   criminal history point puts him in criminal history category I.

13             Level 25, criminal history category I yields a

14   guideline range of 57 to 71 months.

15             Are there any guidelines arguments that I've not

16   addressed?

17             MR. KAMARAJU:  Nothing from the government, your

18   Honor.

19             MR. ABREU:  Nothing from the defense, your Honor.

20             THE COURT:  I don't see a grounds for a departure

21   under the guidelines.  But I note that based on Mr. Rodriguez's

22   safety valve proffer I'm not bound by what would otherwise be

23   the applicable mandatory minimum.

24             Are there any factual issues in dispute?

25             MR. KAMARAJU:  Not from the government, your Honor.

J2M9RESS

1          MR. ABREU:  Your Honor, just one clarification.  In

2    the government's sentencing submission they indicated that

3    during the proffer session my client did not mention that he

4    had been arrested and deported from the United States.  I

5    reviewed my notes and, in fact, that is true.  During the

6    safety valve proffer session we did not discuss that.  However,

7    the DEA 6 reports I was given from when he debriefed in

8    Colombia, he does mention that he was arrested in 2013 and was

9    deported from the United States.  I wanted to clear that up so

10   your Honor did not believe that he misled the government in any

11   way during that proffer session.

12          THE COURT:  Would the government like to be heard on

13   sentence?

14          MR. KAMARAJU:  Unless your Honor has any questions.

15          THE COURT:  I just have one.

16          Based on what -- let me just say what I -- how I am

17   reading all the materials that I have been given; that while

18   Mr. Rodriguez may not have been a broker who could really

19   broker a thousand kilograms of cocaine, the deal that he was

20   arrested for was not his first trip to the rodeo.  He had

21   brokered other -- sorry, that's -- I hope that translates OK.

22          THE INTERPRETER:  Yes.

23          THE COURT:  He had brokered other cocaine deals before

24   this but not as large as the thousand kilogram load that he was

25   talking to the undercover about.

J2M9RESS

1          MR. KAMARAJU:  I think that's right, your Honor.  I

2     think he was involved in much smaller scale things.  I think,

3     as he stated during his proffer, he was trying to impress the

4     undercover by discussing these sort of larger loads and perhaps

5     he was trying to lead the undercover on to see if he could do

6     something, but I don't think he's a first-timer to the drug

7     game.  I think he certainly knew other individuals that had

8     been a part of transactions.

9          I do think that he was not at any point sort of a

10    supplier, for example, or a distributor who had airplanes in

11    the way that he claimed.  I think his involvement has always

12    been more of this brokering or introducing people to each

13    other.  But I would agree he's not a first-timer.

14          THE COURT:  All right.  Mr. Abreu.

15          MR. ABREU:  Thank you, your Honor.

16          A couple of things.  When he was arrested in Colombia

17    on October 20, 2017 he was taken to Los Martes which is a

18    police station, it's a holding area for people that are in the

19    process of being extradited.  You're held there for a couple of

20    weeks until they transfer you to the maximum security prison La

21    Picota.

22          During the time he was still at the police station he

23    retained U.S. counsel -- which was not me, I came in later

24    on -- and his Colombian lawyer, and they arranged for a debrief

25    with the DEA.  On October -- on November 2, that debriefing

J2M9RESS

took place.  And interestingly, the government did not provide
any sort of proffer letter or Kastigar letter or immunity
letter.  Instead, he was read an advice of rights.  So
everything that was said by him during that meeting, obviously,
would be admissible against him.

        Thereafter, he requested an express extradition to the
United States.  And, unfortunately, in Colombia express means
between eight to ten months.  It's not really as quick as he
would like.  He was brought over to the United States.  I was
retained in the interim.

        Once he was here, we reviewed the discovery.  I
reviewed it extensively with him.  We then approached the
government for his safety valve proffer session which was
conducted.  I believe he was truthful in all respects.  And
then we entered a plea agreement with the government.

        What I am trying to say is at all times he's tried to
cooperate fully.  And I totally agree with the government, he
is not anywhere near being a drug trafficker or somebody who
can traffic in thousands of kilos.

        In fact, what was said during the safety valve proffer
is that this whole dealing with this informant was his attempt
to try to steal the front money, the transport money.  He was
trying to get three hundred thousand dollars from this
informant, not to provide any drugs, not to provide any cocaine
or landing strips or airplanes, but simply so he could steal

J2M9RESS

1  the money.

2          THE COURT:  So, in other words, he's not a drug

3  dealer, he's a thief.

4          MR. ABREU:  In this case, yes.

5          THE COURT:  OK.

6          MR. ABREU:  Yes.

7          And for every lie that the informant told him, he told

8  a bigger lie back.  He told the informant that he worked with

9  Pablo Escobar.  I looked it up yesterday and Pablo Escobar was

10  killed in 1993 and he was seven years old.  He was still in

11  Guatemala.  So that's a lie.

12          THE COURT:  Pablo took him early.

13          MR. ABREU:  I could keep going.

14          He said he had been arrested in Costa Rica and

15  extradited to the United States, so on and so on, basically

16  puffing, trying to make himself more than he was.

17          He did, in fact, broker that ten-kilo deal in

18  California.  That's why he pled guilty.  He is guilty.  And I'm

19  not trying to minimize that.

20          And I looked at other sentences in this district

21  for -- for example, the boat cases.  I see people sitting on

22  go-fast vessels with a thousand or two thousand kilos.

23          THE COURT:  I don't think he's equivalent to the guys

24  on the boats --

25          MR. ABREU:  This is how I look at it.

J2M9RESS

| | |
|---|---|
| 1 | THE COURT:  OK. |
| 2 | MR. ABREU:  Colombia can produce all the cocaine they |
| 3 | want to produce.  If you can't get it from Colombia to Central |
| 4 | America or Mexico, it's worthless; it's not worth anything. |
| 5 | And the only way to do it is to hire experienced mariners, |
| 6 | people who are sailors, who are captains, who are navigators to |
| 7 | get it from point A to point B.  Yet, those people, who are in |
| 8 | my opinion an integral part of the drug trafficking conspiracy, |
| 9 | receive relatively minor sentences. |
| 10 | He has, unfortunately, by his upbringing, he grew up |
| 11 | in Guatemala.  He left school when he was 14 years old so he |
| 12 | could help his family financially.  He began washing cars for a |
| 13 | certain individual.  That individual led him into this life by |
| 14 | delivering -- having him deliver money, having him deliver |
| 15 | drugs.  That's unfortunately how he was raised. |
| 16 | He's not a drug trafficker.  He has dabbled -- and |
| 17 | I'll agree with the government, I think he's a very, very low |
| 18 | level type person, someone who made some money here and there |
| 19 | by introducing people. |
| 20 | And I would ask the Court to consider, based on his |
| 21 | cooperation or his attempt to cooperate, based on the harsh |
| 22 | conditions that he was subject to in Colombia -- I go to |
| 23 | Colombia every month.  I have several clients in different |
| 24 | stages of extradition.  And the conditions at that prison are |
| 25 | horrible.  There is either no hot water or there is no running |

1    water.  The government doesn't provide you anything.  You have

2    to buy it and then pay the guards to let you bring it in.  And

3    it's this whole corrupt system that's horrible.  And the

4    facilities, even though they were built less than 20 years ago,

5    are in shambles.  And the eight or nine or ten months that he

6    did there is a significant amount of time when you look at the

7    conditions that he was subject to.

8         I would ask the Court to consider a variance.  Perhaps

9    something in -- along the lines of 24 months for him.

10        He's subject to deportation once he finishes his

11   sentence.  In my experience the average time is between one and

12   three months from the time he leaves the Bureau of Prison

13   custody until the time he's physically deported.  Since he was

14   arrested in October 2017 he would still have approximately

15   another year to go if the Court were to sentence him to the 24

16   months.

17        THE COURT:  Is he going to get credit for time that he

18   spent in Colombia?

19        MR. ABREU:  I've had that issue and I was going to

20   bring it up later.  If your Honor somehow in the judgment and

21   sentence puts the date that he was arrested -- because the

22   Bureau of Prisons will go off the PSI.

23        THE COURT:  I'm going to order the presentence report

24   corrected to show the date of the arrest as October 20.

25        MR. KAMARAJU:  So I've come across this issue too

J2M9RESS

1    before, your Honor, and certainly with periods of foreign

2    incarceration and state incarceration.

3           I've think if your Honor wants to -- wants to credit

4    him for that time, the safest way to do it is to factor it into

5    the sentence that you impose as opposed to just asking BOP to

6    credit him for it.

7           THE COURT:  Here's my concern.  My concern is that if

8    I shorten what I would otherwise give him, that I run the risk

9    that Bureau of Prisons is going to give him credit for the

10   Colombia time.

11          MR. KAMARAJU:  Right.

12          THE COURT:  So perhaps I can just make it clear in the

13   J&C that my sentence assumes that he will be credited with his

14   time in Colombia.

15          MR. ABREU:  That would be fine, your Honor.  I'm

16   finished, your Honor.  I think he wants to address the Court if

17   possible.

18          THE COURT:  Of course.  Mr. Rodriguez.  Would you like

19   to be heard?

20          THE DEFENDANT:  Yes.  Good afternoon.  What I wanted

21   to do first was to apologize to your Honor and to the U.S.

22   Attorney for the consideration that was afforded to me.  I

23   learned my lesson that lying is wrong.  And I believe in the

24   American justice system.  And I believe that this is a country

25   of opportunities and that I am being given the opportunity to

J2M9RESS

1     return home.  Thank you very much.

2                THE COURT:  Thank you, Mr. Rodriguez.

3                Mr. Rodriguez, federal law requires me to consider the

4     nature and circumstances of the offense and the history and

5     characteristics of the defendant.  In terms of you, you were

6     raised in Guatemala.  You family did not have a lot of money

7     but it was intact.  You were raised with two parents and

8     brothers and sisters.  At some point you moved to Colombia as

9     far as I can tell for purposes of dealing drugs.  You never

10    finished high school and you have little legitimate employment.

11               So taking into account that assessment of the

12    defendant, I'm required by federal law to impose a sentence

13    that is reasonable and no greater than necessary to achieve the

14    goals of sentence.

15               I've considered all of the required sentencing

16    factors.  I'm only going to discuss the ones that I view as

17    most important.

18               I'll start with the seriousness of the offense.  Drug

19    trafficking, Mr. Rodriguez, is a serious crime.  So you're not

20    being sentenced and you're not being prosecuted because you

21    lied.  The lying was bad and the lying got the DEA more and

22    more interested in you.  But you're being prosecuted because

23    you brokered the transaction of ten kilograms of cocaine to be

24    purchased in the United States.  That's the crime.  Ten

25    kilograms may not seem like a lot to you but ten kilograms of

1    pure cocaine is a lot of cocaine.  So it's a serious crime.

2         Considered the need to promote respect for the law.

3    You know I see you, Mr. Rodriguez, as someone who is perfectly

4    happy to sell significant quantities of cocaine into the United

5    States and to broker the deals with no concern of the fact that

6    what you're doing is you're pushing poison into the United

7    States.

8         I've considered the need to provide just punishment

9    while avoiding unwarranted disparities.

10        What that means is, Mr. Rodriguez, is that similar

11   defendants should get similar sentences.  Your lawyer pointed

12   to the sort of people who are caught on fast boats.  There's a

13   wide variety of those defendants.  But it's not uncommon for

14   the drug traffickers to use people that, while they have marine

15   skills, they don't really know what they're doing.  They're

16   not -- they're sort of dragooned into doing -- moving the

17   cocaine out into the ocean where it will be picked up by some

18   other ship.  Those people are not as culpable as you.  You knew

19   exactly what you were doing.  You were doing it knowingly and

20   willfully and intentionally to transact and to broker

21   transactions of cocaine into the United States.

22        So while the guys that don't know anything and get

23   caught on a fast boat frequently do get two or three year

24   sentences in this court, I don't view you as that equivalent.

25   I view you as someone who, on a not -- maybe not on huge

quantities but you've done this before, you know what you're
doing, and you're intentionally brokering sales of cocaine into
the United States.

I've considered the need to deter criminal conduct.
Mr. Rodriguez, there are two aspects of deterrence that judges
are supposed to consider, what we call specific deterrence and
general deterrence.  General deterrence is how do we deter
people generally from committing crimes.  Specific deterrence
is how do we deter you from committing another crime.

In terms of general deterrence, I have absolutely no
thought that whatever I do with you is going to have any impact
whatsoever on drug trafficking generally.  The best I can hope
for is that when you go back to Colombia or back to Guatemala
you tell people don't get involved in selling drugs into the
United States because they are treated very harshly.  But I
don't think it's going to have much of an impact on the drug
trade.  So my only focus on deterrence is on you, is how do we
deter you from committing another crime.

It is my hope that the time that you spend -- that you
spent in Colombia in jail, and that you're going to spend in
the United States in jail will persuade you that this is not
how you want to live your life; that what you want to do when
you go back home, if it's Guatemala or Colombia, is to get a
legitimate job and do legitimate work so you're not lying to
people about Pablo Escobar and you're not embarrassed to talk

1     to your family, and you're not getting -- looking over your

2     shoulder because the police are coming for you.  So get a

3     legitimate job.

4             I've considered the need to provide the defendant with

5     needed educational or vocational training, medical care or

6     other correctional treatment.

7             Mr. Rodriguez, I urge you to take advantage of

8     whatever programs the Bureau of Prisons will make available to

9     you, to learn how to do something, so that when you get out of

10    jail and go back home you can get a real job.  That's the best

11    way to stay away from the narcos, is to have a legitimate job

12    that earns you legitimate money.

13            Taking all of that into account, I'm going to sentence

14    the defendant to the custody of the Attorney General for a

15    period of 57 months, to be followed by a period of supervised

16    release of two years.

17            In the judgment and commitment I'm going to make clear

18    that I expect the Bureau of Prisons to give him credit for time

19    he spent postarrest in Colombia.

20            There are mandatory conditions of supervised release.

21    I'm telling you about all this, Mr. Rodriguez, although I never

22    expect you to be on supervised release.  You should go from the

23    Bureau of Prisons to the immigration -- to the custody of

24    immigration, and immigration will take you back out of the

25    country either to Colombia or to Guatemala.  In the unlikely

event that that doesn't happen and you're released into the
United States, you will be under supervised release.  There are
a whole bunch of conditions of supervised release.  The
mandatory -- in addition to the mandatory conditions of
supervised release, which will be explained to you if this
comes to pass, the key requirements are that you may not commit
another crime.  You cannot illegally possess a controlled
substance.  You cannot possess a firearm or other destructive
device.  You will be subject to mandatory drug testing.  You
must cooperate in the collection of DNA.

In addition to the standard conditions of supervision,
again, in this unlikely event that you're released, I'm
imposing the following special conditions.

First, you must cooperate with the immigration
authorities.  So if they release you, they're going to release
you and tell you to show up somewhere, you've got to do that.
Whatever immigration tells you, you've got to do it.

You also must submit your person, residence, place of
business, vehicle, electronic devices or other premises that
are under your control to search if the probation officer has a
reasonable belief that contraband or evidence of a violation of
the conditions of release may be found there.  Any search must
be conducted at a reasonable time and in a reasonable manner.
Failure to submit to search may be grounds for revocation.  And
the defendant must inform any other residents that the premises

J2M9RESS

1    may be subject to search pursuant to this condition.

2          The defendant must report to the nearest probation

3    office within 72 hours of release.

4          And he'll be supervised by the district of residence.

5          The government is not seeking forfeiture; is that

6    correct?

7          MR. KAMARAJU:  Correct, your Honor.

8          THE COURT:  I must impose a $100 special assessment.

9          Mr. Abreu, do you have any request for designation?

10          MR. ABREU:  Only South Eastern United States.

11          THE COURT:  Southeast United States?

12          MR. ABREU:  Yes.

13          THE COURT:  Mr. Rodriguez, I'm going to ask that you

14    be designated in the Southeast United States.  I can't

15    guarantee that that's going to happen.  It's up to proceed --

16    it's up to the Bureau of Prisons where they will put you.  But

17    I will ask that you be designated to somewhere in the

18    southeast.

19          To the extent you have not given up your right to

20    appeal your sentence through your plea of guilty and the

21    agreement you entered into with the government in connection

22    with that plea, you have the right to appeal.  If you're unable

23    to pay the cost of an appeal you may apply for leave to appeal

24    in forma pauperis.  The notice of appeal must be filed within

25    14 days of the judgment of conviction.

J2M9RESS

```
 1              Anything further from the government?

 2              MR. KAMARAJU:  Just to confirm there are no open

 3    counts.

 4              THE COURT:  Are there any open counts?

 5              MR. KAMARAJU:  There are no open counts, your Honor.

 6              I believe your Honor stated, just for the record, I

 7    think with the corrections your Honor mentioned you adopted the

 8    PSR as the factual findings.

 9              THE COURT:  Yes.

10              MR. KAMARAJU:  Thank you, your Honor.

11              THE COURT:  Anything further from the defense?

12              MR. ABREU:  No, your Honor.  Thank you.

13              THE COURT:  All right.  Thank you.  Mr. Rodriguez,

14    good luck.

15              MR. KAMARAJU:  Thank you, your Honor.

16              THE DEFENDANT:  Thank you very much.

17              (Adjourned's)

18

19

20

21

22

23

24

25
```

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

### Southern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | ) **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | ) |
| Jose Restrepo, a/k/a "Pino" a/k/a "Leonel Alexander Rodriguez-Rodriguez" a/k/a Jose Alfred Jimes" | ) Case Number:  17-cr-00029-VEC-1 |
| | ) USM Number:  76210-054 |
| | ) _____ |
| | ) Robert Abreu |
| | ) Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)   One (1)

☐ pleaded nolo contendere to count(s)
   which was accepted by the court.

☐ was found guilty on count(s)
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21:952=NI.F | CONSPIRACY TO IMPORT COCAINE INTO THE UNITED | 11/30/2016 | 1 |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____  ☐ is  ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

2/22/2019
Date of Imposition of Judgment

_Valerie Caproni_
Signature of Judge

HON. VALERIE CAPRONI, USDJ
Name and Title of Judge

2 · 25 · 19
Date

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

AO 245B (Rev. 02/18) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page   2   of   7

DEFENDANT:  Jose Restrepo
CASE NUMBER:  17-cr-00029-VEC-1

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

Fifty-Seven (57) Months. The defendant should receive credit for the period of time spent while incarcerated in Columbia.

☑  The court makes the following recommendations to the Bureau of Prisons:

It is recommended that the defendant be housed in a facility in the Southeast region of the United States.

☐  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

    ☐  at _____  ☐ a.m.  ☐ p.m.  on _____ .

    ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐  before 2 p.m. on _____ .

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
           Sheet 3 — Supervised Release

Judgment—Page   3   of    7

DEFENDANT:  Jose Restrepo
CASE NUMBER:  17-cr-00029-VEC-1

# SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :

  Two (2) Years

# MANDATORY CONDITIONS

1.   You must not commit another federal, state or local crime.
2.   You must not unlawfully possess a controlled substance.
3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   - ☐  The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☐  You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☑  You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐  You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐  You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
                       Sheet 3A — Supervised Release

| | Judgment—Page | 4 | of | 7 |

DEFENDANT:  Jose Restrepo
CASE NUMBER:  17-cr-00029-VEC-1

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____   Date _____

AO 245B (Rev. 02/18)  Judgment in a Criminal Case
Sheet 3B — Supervised Release

Judgment—Page ___5___ of ___7___

DEFENDANT:  Jose Restrepo
CASE NUMBER:  17-cr-00029-VEC-1

## ADDITIONAL SUPERVISED RELEASE TERMS

The defendant shall comply with the immigration law and cooperate with the Department of Homeland Security, Bureau of Citizenship and Immigration Services (BCIS).

The defendant shall submit his person, residence, place of business, vehicle, electronic devices, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. This search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. The defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

The defendant shall be supervised by the district of residence.

Case 1:17-cr-00029-VEC Document 262 Filed 02/25/19 Page 6 of 7

DEFENDANT: Jose Restrepo
CASE NUMBER: 17-cr-00029-VEC-1

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| TOTALS | $ 100.00 | $ | $ | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| TOTALS | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the ☐ fine ☐ restitution.

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

Judgment — Page 7 of 7

DEFENDANT: Jose Restrepo
CASE NUMBER: 17-cr-00029-VEC-1

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☑  Lump sum payment of $ 100.00 due immediately, balance due

☐ not later than _____ , or
☐ in accordance with  ☐ C,  ☐ D,  ☐ E, or  ☐ F below; or

B  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

C  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.